**UNITED STATES, Appellee,**

v.

**Edward F. WELCH, Jr., Sergeant, U.S.
Army, Appellant.**

No. 55,035.
CM 447227.

U.S. Court of Military Appeals.

Sept. 21, 1987.

---

For Appellant: *Captain Scott A. Hancock* (argued); *Colonel Brooks B. LaGrua, Lieutenant Colonel Paul J. Luedtke* (on brief); *Captain Annamary Sullivan.*

For Appellee: *Captain Thomas L. Herrington* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Lieutenant Colonel Larry D. Williams* (on brief); *Major Robert L. Swann.*

SULLIVAN, Judge:

A general court-martial at Fort Riley, Kansas, found appellant guilty of rape and forcible sodomy of a 12–year-old female child, and assault on several children, including the victim of the other acts, in violation of Articles 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 928, respectively. On January 21, 1985, the members of this court-martial sentenced him to a dishonorable discharge, confinement for 5 years, forfeiture of $300.00 pay per month for 5 years, and reduction to the lowest enlisted grade. The convening authority approved this result, and the Court of Military Review affirmed in an unpublished memorandum opinion.

This Court granted review of the following issues raised by appellate defense counsel:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY PERMITTING HEARSAY TESTIMONY WHICH WAS INADMISSIBLE UNDER MILITARY RULE OF EVIDENCE 803(4).

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY REFUSING TO ADMIT EVIDENCE OF THE ALLEGED VICTIM'S PRIOR SEXUAL EXPERIENCES.

We hold that the victim's statements made to a psychologist were shown to fall within the medical-diagnosis-and-treatment exception to the hearsay rule established by Mil. R.Evid. 803(4), Manual for Courts-Martial, United States, 1984. We also hold that any error in the judge's ruling concerning evidence of the victim's sexual conduct under Mil.R.Evid. 412(b) was harmless. Accordingly, we affirm the decision of the court below.

The evidence indicates that the victim, her sister, and half-brother, all alleged victims in the assault charge, were taken to Irwin Army Community Hospital at Fort Riley, Kansas. There they were evaluated for evidence of physical child abuse, diagnosed, and treated for injuries. During a physical examination of the victim by Dr. Renee Quinton, a pediatrician, evidence of sexual activity was also discovered, and the victim was referred by this physician to Major Tomi MacDonough, a psychologist. Major MacDonough holds a Ph.D. in clinical psychology, but he is not a medically licensed physician. The victim made statements to this doctor and a senior psychotherapist, Mrs. Virginia Chaput, a member of the staff with Major MacDonough. These statements, along with the testimony of the victim, were later admitted at trial as evidence of appellant's guilt.

The only item of physical evidence admitted which corroborated the statements made by the victim concerning sexual intercourse with appellant was medical evidence that she had a "flatulous vagina." Dr. Quinton stated in her deposition admitted at trial that this physical condition was "unusual for a" girl "her age," and it was consistent with the victim's statements that she had engaged in sexual intercourse with appellant. Defense counsel requested that he be permitted to question the victim and inquire whether she had had two prior instances of intercourse with two other named individuals.

The military judge denied the defense request. He stated that "defense's offer of proof fails to disclose evidence sufficiently precise to show how said evidence would explain an issue in this case or provide a defense for the accused, or is Constitutionally required." Specifically, the military judge noted that there was no proffer concerning the dates of these alleged acts of intercourse presented to the court. The military judge noted, however, that defense counsel might reoffer this evidence at a later time. Appellant's trial defense counsel then stated, "We will rethink our offer

of proof and represent that to the court then." Counsel did not readdress this proffer of evidence, and the military judge *sua sponte* raised the matter during a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a), held concerning instructional matters. Defense counsel indicated, *inter alia*, that he did not wish to present evidence under Mil.R.Evid. 412(b) at that time because, as a tactical matter, he feared the inquiry "would be perceived by the members...as a cheap shot" and nothing more than a character attack on a 12–year-old girl.

### I

The prosecution in this case offered testimony from Major MacDonough and Mrs. Chaput that the victim made certain statements to them asserting appellant sexually abused her. *See generally* Mil.R.Evid. 801(c). Defense counsel objected to this evidence on the ground that it was hearsay which did not qualify for admission under Mil.R.Evid. 803(4). *See generally* Mil.R. Evid. 802. The military judge admitted those statements asserting that sexual acts occurred but refused admission of any statements from the victim identifying appellant as the guilty party.

Mil.R.Evid. 803 states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*   \*   \*   \*   \*   \*

(4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Appellant's basic objection to this testimony was that Major MacDonough and Mrs. Chaput were not medical doctors and, therefore, statements to them did not qualify under the above rule. Also, he asserted that the alleged victim's motive in making these statements was not to seek medical treatment but to perfect a complaint of sexual abuse for the Child Protection Case Management Team. Accordingly, he argues such statements were inadmissible under Mil.R.Evid. 803(4). We disagree.

Mil.R.Evid. 803(4) and its Federal counterpart, Fed.R.Evid. 803(4), contain no language which limits their applicability to medically licensed doctors. Moreover, the drafters of both these rules specifically envisioned that "the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Advisory Committee's Notes to Fed.R.Evid. 803(4), 28 U.S.C.A. *Accord* Drafters' Analysis of Mil.R.Evid. 803(4), App. 22, Manual, *supra; see* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 642 (2d ed. 1986). Finally, other courts have ruled that statements to persons such as psychologists may fall under the medical diagnosis-and-treatment exception. *United States v. DeNoyer*, 811 F.2d 436 (8th Cir.1987); Oldsen v. People, 732 P.2d 1132 (Colo.1986); *In re Helms*, 77 N.C.App. 617, 335 S.E.2d 917 (1985); *People v. Skinner*, 153 Mich.App. 815, 396 N.W.2d 548 (1986). Absent persuasive reasoning or precedent to the contrary, we hold the medical-doctor objection under Mil.R.Evid. 803(4) is without merit. *See generally United States v. Deland*, 22 M.J. 70 (C.M.A.), *cert. denied,* —— U.S. ——, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986).

Concerning the question of motive, the premise underlying Mil.R.Evid. 803(4) is that a patient undergoing diagnosis or receiving treatment from a trained medical professional has an incentive to be truthful because such answers will promote his own well-being. *See generally* 4 J. Weinstein and M. Berger, *Weinstein's Evidence* 803(4)[01] (1985). Thus, we have held that, for a statement to qualify under Mil.R. Evid. 803(4), "the patient must have some expectation of benefiting in this way when he makes the statement, if it is to be admitted as evidence." *United States v. Deland, supra* at 73.

■ Here, the military judge found as a matter of fact that the admitted statements were made for the purpose of diagnosis and treatment. Evidence in the record supports this finding of fact in that it shows that Major MacDonough and Mrs. Chaput interviewed the victim as part of a mental health team who were acting on a technical consult from Doctor Quinton, the treating pediatrician. Participation by a member of the Child Protection Team in the referral process does not alone undermine the beneficial and non-prosecutorial nature of this encounter. *See United States v. Deland, supra* at 73. Moreover, there was no evidence that the victim's motive in making her statements to Major MacDonough or Mrs. Chaput was other than a patient's responding to a doctor's questioning her for treatment. *See United States v. Renville,* 779 F.2d 430, 439 (8th Cir.1985); *cf. United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980), cert. denied, 405 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Accordingly, neither the military judge nor the Court of Military Review erred in finding that these statements were admissible under Mil.R.Evid. 803(4).

## II

■ The second granted issue in this case challenges the military judge's ruling prohibiting defense counsel from questioning the victim about acts of sexual intercourse with men other than appellant. *See* Mil.R.Evid. 412. He also denied a defense request to introduce extrinsic evidence of these sexual acts if the victim denied them. Mil.R.Evid. 613(b). We hold that the subsequent conduct by defense counsel under the peculiar circumstances of this case waived or rendered harmless any error of the trial judge in these rulings. *See generally Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

As a starting point we note that Dr. Quinton, a government witness, had testified in the Government's case-in-chief that the victim had a "loose" or "flatulous" vagina. She further opined that this physical condition was consistent with the victim's pretrial statements that she engaged in sexual intercourse with appellant. Defense counsel recognized the corroborative potential of this medical evidence and requested that he be permitted to explain this physical condition with evidence of sexual acts with other men. *See generally* Mil.R. Evid. 412(b). *Cf. United States v. Shaw,* 824 F.2d 601 (8th Cir., 1987). Defense counsel particularly stated that he would put in evidence of sexual acts which occurred prior to Doctor Quinton's examination.

■ The military judge's initial response to this proffer was, if not plainly erroneous, somewhat disingenuous. He first asserted that it was not "a specific and precise offer of proof, which, of necessity would minimally include dates which could establish relevance" to explain an issue in this case. Such a ruling, although well within the general powers of a judge (*see* 1 Wigmore, *Evidence* § 20a (Tillers rev. 1983)), was not at all justified in the present case. The cause of the physical condition of the victim's vagina was made an issue in this case by the prosecution. *See generally United States v. Kasto,* 584 F.2d 268 (8th Cir.1978); *see also* Mil.R. Evid. 412(b)(2). Moreover, the relevance of the proffered evidence to show causality was clearly shown when it was averred that these acts of the victim, like the charged offenses, occurred on some date prior to the doctor's examination. This is especially true since the Government presented no evidence that the condition could be caused only by recent sexual intercourse or by acts on a certain date.

■ Taking a somewhat different tack, the military judge also asserted that the general nature of the proffer suggested "fishing expeditions," which Mil.R.Evid. 412 was designed to prevent. Here, however, defense counsel expressly noted the names of individuals involved in these acts, named the persons to whom the alleged victim admitted these acts, and asserted these acts occurred before Doctor Quinton's examination. Clearly, this proffer was not based on speculation (*cf. United States v. Young,* 49 C.M.R. 133, 136 (A.F.

C.M.R.1974)), and it should not have been considered such simply because Mil.R.Evid. 412 evidence was involved. *Cf. United States v. Hicks,* 24 M.J. 3 (C.M.A.1987). These particular rulings constituted a clear abuse of discretion by the judge. *Cf. United States v. Means,* 24 M.J. 160 (C.M.A. 1987).

Nevertheless, the judge did not make a final ruling excluding this evidence at this point in the trial. Prudently, he left the door open for the defense to reoffer this evidence at a later time. *See United States v. Klein,* 20 M.J. 26, 28–30 (C.M.A. 1985) (Everett, C.J., concurring in the result); *cf. United States v. Hinton,* 21 M.J. 267 (C.M.A.1986). Moreover, the military judge subsequently invited defense counsel to reoffer this evidence after testimony had been presented by a witness suggesting the alleged victim had written a note acknowledging this conduct. Nevertheless, the defense's response to this invitation was to decline to go forward again with his offer of proof. *See generally Luce v. United States, supra.*

In this regard we note that the military judge asked the defense counsel, prior to the findings instructions, whether defense counsel wished to pursue the Mil.R.Evid. 412 issue. The following ensued:

MJ: When we last recessed we were getting under way on findings instructions. There's a matter that I wish to cover before we proceed further on findings instructions and I want to make certain that opposing parties have the opportunity to be heard. I want the record to reflect that the military judge has *sua sponte* considered the testimony of Mr. Garwick, I believe it is, concerning Lori Peck's note and the defense's previous request to introduce evidence before the members of Lori Peck's sex life. Defense, at this time, do you desire to make further offer of proof regarding your 412 issue?

CDC: No, Your Honor, but I would like the record to be clear.

MJ: Okay.

CDC: For the court's information, the note that was referred to by Mr. Garwick, although it existed at one time, and after diligent efforts by both Captain Hutter and myself, cannot be found. As near as can be determined, it was destroyed by a[n] elderly secretary or vice-principal who was—did not appreciate the contents in the office of Ware Elementary School. In any event, the note is not available. Although we would persist in our 412 motion for records purposes, the defense feels at this point in time, to reopen the case, if that should be the ultimate decision of the military judge, after a proffer of proof under 412 of the Military Rules of Evidence, defense would then be put in a position—posture of having to reopen the case and it's our feeling that tactically that would be perceived by members of the jury as a sign of a weak case against the—on behalf of Sergeant Welch and merely an attempt to bolster the case by specifically attacking the victim...In other words, we think it would be perceived by members of the court as a cheap shot, and for that reason we will not, at this time, proffer any additional testimony under 412.

MJ: Thank you. Government, anything further?

TC: Not—not on that issue, Your Honor.

MJ: All right, it remains the ruling of the court that the information provided fails to sufficiently persuade the military judge that it is of such precision that it would explain an issue in the case or provide a defense for the accused or his Constitutional rights, so I'll not delve further into any potential hearing. We will note that for the record, the defense has—defense's 412 proffer is preserved. Are there other matters to take up before we get into—on into findings instructions?

We cannot find that prejudicial error occurred in this context. First, defense counsel expressly rejected an opportunity to set the record straight concerning the victim's physical condition. *See United States v.*

*Needham,* 23 M.J. 383, 385 (C.M.A.1987). Second, his reasons for rejecting this opportunity can only be described as somewhat specious and were not reasonably related to the judge's earlier error. The military judge did not require that the victim's note be produced in court. In fact, his offer to reopen the case was based on the testimony of a witness asserting its existence. Moreover, in view of the overwhelming evidence of guilt in this case, we are convinced that, regardless of when this evidence was introduced, it could be viewed by the members as a "cheap shot." Third, defense counsel himself initially characterized Doctor Quinton's testimony on the condition of the vagina as not "all that critical," and later he significantly undermined its corroborative impact by his cross-examination of this witness. Accordingly, the record as presented to us by appellant shows no harm. *See generally Luce v. United States, supra* 469 U.S. at 42–43, 105 S.Ct. at 463–464.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.