UNITED STATES, Appellee,

v.

Ronald E. EDENS, Sergeant, U.S. Army, Appellant.

No. 63,794.

CM 8800982.

U.S. Court of Military Appeals.

Argued June 21, 1990.

Decided Sept. 27, 1990.

For Appellant: *Captain Lauren B. Leeker* (argued); *Colonel Robert B. Kirby, Lieutenant Russell S. Estey, Captain Brian D. Bailey* (on brief).

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial before a military judge sitting alone, at Karlsruhe, Federal Republic of Germany. Contrary to his pleas, he was found guilty of two specifications of committing forcible sodomy upon a child under the age of 16 and one specification of committing indecent acts upon a child under the age of 16, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. He was sentenced to confinement for 9 years, total forfeitures, reduction to E–1, and a dishonorable discharge. The convening authority approved the sentence, and the Court of Military Review affirmed. 29 MJ 755 (1989). This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE AND THE ARMY COURT OF MILITARY REVIEW ERRED TO APPELLANT'S PREJUDICE BY FINDING THAT OUT–OF–COURT STATEMENTS BY THE ALLEGED CHILD–VICTIMS TO A PHYSICIAN WERE ADMISSIBLE AS EXCEPTIONS TO THE HEARSAY RULE.[1]

Appellant was convicted of performing sodomy and indecent acts upon his natural

---

1. Appellant did not, at trial, contest admission of this evidence on Sixth Amendment confrontation grounds, particularly regarding L, the unavailable witness. Accordingly, such a basis for challenging the evidence was waived. Due to this waiver, the prosecution had no occasion to demonstrate compliance with confrontation principles most recently articulated in *Idaho v. Wright*, — U.S. —, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). For this reason, we also do not reach that issue here.

daughter, L, and her friend, A. Their ages were 3 and 5, respectively. In the spring of 1987, appellant's wife noticed their daughter, L, exhibiting strange sexual behavior.[2] Eventually, L told her mother that appellant had made her suck his penis. When his wife confronted him with this, appellant denied the incident and said that "maybe" their daughter "had seen it on one of the X-rated films we have in the house ... or heard it from one of the boys, you know, in the neighborhood." Appellant's wife chose to believe him and did not pursue the matter further. In December of 1987, however, Specialist Four R, a neighbor of appellant, confronted appellant's wife and told her that he had learned from his daughter, A, that appellant had made her suck his penis on a number of times in the past few months.[3]

Appellant's wife and her neighbors reported the incidents to authorities and took L and her friend, A, to be interviewed by a Criminal Investigations Command (CID) agent. The children were eventually seen by Lieutenant Colonel (Dr.) Parker, Chief of Pediatrics at the 130th Station Hospital, Heidelburg, Germany. The statements which L and A gave to Dr. Parker and which were admitted into evidence as exceptions to the rule against hearsay under Mil.R.Evid. 803(4) (statements made for the purposes of medical diagnosis or treatment), Manual for Courts–Martial, United States, 1984, are the subjects of this appeal.

Dr. Parker is a Board Certified Pediatrician and a Fellow of the American Academy of Pediatrics with a specialty in the treatment and diagnosis of child abuse. At trial, appellant stipulated that Dr. Parker was an expert in the area of child abuse. Dr. Parker conducted physical examina-

tions as well as interviews of L and A. At the outset, he testified that his purpose in examining and interviewing the children was to determine if any type of sexual abuse had occurred with the children; secondly, how much, if this had taken place, how much trauma there was present within both children and within the families and then to initiate a plan for action as far as therapy that would be needed within both families and with the children.

With regard to the children's understanding as to why they were seeing him, Dr. Parker stated that L, the 3–year old, "openly verbalized" that she understood the "seriousness" of why she was talking with him and that, although A, the 5–year old, was initially hesitant to speak with him, she eventually opened up to him. L was not available to testify at trial.[4] The friend, A, was available to testify at trial, and while testifying against appellant, stated that she remembered speaking with "the doctor."

Dr. Parker testified that L had told him "in her own words, that she sucked her daddy's pee-pee." Dr. Parker testified that L indicated to him what time of day the abuse occurred, what appellant was wearing, and where in her house the abuse had occurred. Dr. Parker testified that, during the examination and interview, L "was using laughter as a coping mechanism ... [and] also as a means of avoiding answering the questions" that he put to her. Dr. Parker stated that A told him in detail of how appellant, on a number of occasions, "unzipped his pants, pulling out his penis and ... [had] her suck on it. She also described ... [appellant] having fondled her, reaching under her panties and feeling her in the area of her clitoris and her vaginal area."

---

2. Apparently L had put her mouth on the penis of appellant's infant son, while appellant's wife was changing his diaper. Appellant's wife immediately told L to stop, to which L responded, "My daddy lets me do it."

3. The friend, A, had been in a store one afternoon near Christmas with her mother and became upset, telling her mother that appellant "makes

me look at his penis." Later that evening she told her father that appellant "made me lick" his penis.

4. The defense stipulated that L was not available to testify within the meaning of Mil.R.Evid. 804(b)(5). Apparently, appellant's wife had sent her back to the United States to be with her grandparents.

Over defense objection, the military judge found these statements admissible as exceptions to hearsay, as statements given for the purposes of medical diagnosis and treatment, under Mil.R.Evid. 803(4), or admissible as residual hearsay under Mil.R. Evid. 804(b)(5) (as applied to L's statement) and 803(24) (as applied to A's statement). For the reasons stated below, we agree that the statements were admissible as statements made for the purposes of diagnosis and treatment.[5]

Statements which are offered as exceptions to hearsay under Mil.R.Evid. 803(4) must satisfy two conditions: first the statements must be made for the purposes of "medical diagnosis or treatment"; and second, the patient must make the statement "with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought." *United States v. Deland*, 22 MJ 70, 75 (CMA), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986). Thus, "[i]t is incumbent upon the moving party to show not only that the medical person was treating or diagnosing the patient but also that the patient furnishing the information was seeking such help." *United States v. Williamson*, 26 MJ 115, 118 (CMA 1988). "[T]he premise underlying" the exception "is that a patient undergoing diagnosis or receiving treatment from a trained medical professional has an incentive to be truthful because such answers will promote his own well-being." *United States v. Welch*, 25 MJ 23, 25 (CMA 1987)(citation omitted). "Although there may be some relaxing of the quantum of proof in those situations where a child is being treated, the facts and circumstances must support a finding that both prongs of the test were met." *United States v. Williamson, supra* at 118

(citing *United States v. White*, 25 MJ 50 (CMA 1987)).

■ In the present case, the military judge found as a matter of fact that "both [L] and [A] made statements to Dr. Parker in order for Dr. Parker to determine if sexual abuse occurred, and if so, what therapy plan would be appropriate." The Court of Military Review agreed that there was evidence in the record to sustain such a finding, and we see no cause to disturb that finding on appeal. *United States v. Welch, supra.* The record shows that the girls understood that they were seeing a doctor; that they were being physically examined as well as asked questions about what had happened to them; and that the doctor needed the information in order to help them. *Contra United States v. Avila*, 27 MJ 62, 66 (CMA 1988), *cert. denied*, — U.S. —, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989).

■ We emphasize that in child sexual abuse cases dealing with statements offered under Mil.R.Evid. 803(4), the proponent of the statement must be able to satisfy both conditions precedent to admitting the statements into evidence. It must be shown that the child is aware that he or she is being treated for sexual abuse, otherwise the entire premise of the reliability of the statement dissipates. J. Myers, *Child Witness Law and Practice* § 5.36 at 358 (1987). We are satisfied that both prongs were met here.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

**5.** Because we find the statements admissible under Mil.R.Evid. 803(4), we need not address whether they are admissible as residual hearsay under Mil.R.Evid. 803(24) or 804(b)(5).