UNITED STATES

v.

Mark K. HOLLIS, Journalist First
Class (E–6), U.S. Navy.

NMCM 99 00297.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 2 April 1998.

Decided 15 Dec. 2000.

Capt Curtis M. Allen, USMC, Appellate Defense Counsel.

LT Frank M. Doherty, JAGC, USN, Appellate Defense Counsel.

LT William C. Minick, JAGC, USNR, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON, and NAUGLE, Appellate Military Judges.

LEO, Senior Judge:

Contrary to his pleas, the appellant was convicted before a military judge sitting as a general court-martial of rape, forcible sodomy, and commission of indecent acts with a person under 16 years of age, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934. He was awarded a dishonorable discharge, confinement for 22 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the appellant's assignments of error, the Government's response, and the appellant's reply; we have also considered the oral arguments by the parties on 1 November 2000. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

### I. Background

The appellant was charged with raping, forcibly sodomizing, and committing indecent acts upon his six-year-old daughter, JH, on *divers occasions during the summer of 1997* in Naples, Italy. When interrogated by an agent from the Naval Criminal Investigative Service [NCIS], the appellant admitted only that he had touched JH while role-playing with her in an attempt to have her disclose to him how she had supposedly been molested several months earlier by a playmate when JH was still living with her mother. The Government's evidence at trial included statements that JH had made to two physicians, Drs. Novek and Craig, who interviewed and examined her on separate occasions. JH disclosed that the appellant had sexually abused her by engaging in activity that included forcible intercourse and sodomy. The Government also introduced the out-of-court statements of the four-year-old

sister, RH, who was present when some of the alleged acts occurred. Medical examinations of JH revealed evidence of sexual abuse.

Over defense objection, the statements by JH and RH were admitted under the medical treatment exception to the hearsay rule. Mil.R.Evid. 803(4), Manual for Courts-Martial, United States (1998 ed.).[1] Neither of the children testified at the trial in Naples because they had already returned to the United States. The appellant was eventually convicted of committing rape and indecent acts upon JH on divers occasions and of forcible sodomy.

### II. Medical Treatment Exception to Hearsay Rule

The appellant contends that the military judge erred by admitting into evidence the out-of-court statements of the victim and her younger sister under the medical treatment exception to the hearsay rule. We disagree.

Generally, the standard of review when a military judge admits or excludes evidence is whether there was an abuse of discretion. *United States v. Sullivan*, 42 M.J. 360, 363 (1995); *United States v. Casey*, 45 M.J. 623, 627 (N.M.Ct.Crim.App.1996).

When the medical exception to the hearsay rule is involved, the question whether the patient has the requisite state of mind and expectation of receiving a medical benefit is a preliminary question of fact under Mil.R.Evid. 104(a). As such, it will be set aside "only if clearly erroneous."

*United States v. Kelley*, 45 M.J. 275, 280 (1996)(*quoting United States v. Quigley*, 40 M.J. 64, 66 (C.M.A.1994)). After reviewing the record, we conclude that the military judge's findings are not clearly erroneous and, therefore, that he did not abuse his discretion in admitting the statements in question.

The rationale for the medical treatment exception is that "a patient undergoing diagnosis or receiving treatment from a trained medical professional has an incentive

---

1. Under Mil.R.Evid. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule.

to be truthful because such answers will promote his own well-being." *United States v. Welch,* 25 M.J. 23, 25 (C.M.A.1987). Accordingly, statements admitted under this exception are considered to be "inherently reliable," *United States v. White,* 25 M.J. 50, 51 (C.M.A.1987), and the moving party need not show that the declarant is unavailable to testify in order for the statements to be admitted. MIL.R.EVID. 803; *United States v. Dean,* 31 M.J. 196, 203 (C.M.A.1990). However, to be admissible, such evidence must satisfy a two-prong test: "[F]irst the statements must be made for the purposes of medical diagnosis or treatment; and second, the patient must make the statement with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought." *United States v. Faciane,* 40 M.J. 399, 403 (C.M.A.1994)(internal quotes and citation omitted).

The patient's state of mind or motive in providing the statement is critical in determining the statement's admissibility. *Id.* "Obviously, very young children will not have the same understanding or incentive as adults when making statements to persons providing health care." *United States v. Avila,* 27 M.J. 62, 66 (C.M.A.1988). Therefore, the test may be relaxed somewhat to take into account a child's capacity to comprehend the relationship or connection between her disclosure and the medical benefit that she expects to receive. *United States v. Edens,* 31 M.J. 267, 269 (C.M.A.1990); *United States v. Williamson,* 26 M.J. 115, 118 (C.M.A. 1988).[2] In *Edens,* our superior Court held that the test for admissibility was met when the record showed that the children (three and five-years-old, respectively) understood (1) that they were seeing a doctor, (2) that they were being physically examined and questioned to determine what had happened to them, and (3) that the doctor needed this information in order to help them. *Edens,* 31 M.J. at 269. In cases of abuse, the evidence provided by a child under the medical treatment exception may include the identity of the abuser when such information is reasonably necessary for the diagnosis or treat-

ment of the child (e.g., a close relative as opposed to a stranger). *United States v. Deland,* 22 M.J. 70, 74 (C.M.A.1986). The two-prong test for admissibility can be satisfied through the testimony of witnesses other than the child herself (e.g., health care provider or parent). *United States v. Cox,* 45 M.J. 153, 157 (1996); *Quigley,* 40 M.J. at 66.

### A. Interview of JH by Dr. Novek

The first physician to examine JH was Dr. Novek, a staff pediatrician at the Naval Hospital in Naples, Italy. JH was referred to him on 11 August 1997, by a social worker from the Family Service Center [FSC] following an allegation of possible sexual abuse committed the night before. His purpose in examining JH was to determine if there had been abuse and if medical treatment or intervention was required. He stated that a routine part of a medical examination includes taking a detailed history from the patient to identify the symptoms and causes of any medical illnesses or injuries.

The appellant's defense counsel objected to the admission of any testimony by Dr. Novek under the medical treatment exception concerning what JH may have said. In overruling the defense objection, the military judge made the following findings:

> I specifically state for the record that the court has heard ample evidence that [JH] was aware of the circumstances for which she was at the doctor's office. She recognized the doctor from prior visits for medical treatment. The doctor and his staff advised her that she was there for possible medical treatment and to determine what was wrong with her so they could get treatment, and what had happened so she could be treated. No evidence to the contrary that she didn't understand that. In fact, the doctor indicated that in his opinion, she did, and his opinion is obviously based on previous exposure to her also. So your objection is overruled.

Record at 95.

Dr. Novek testified that he identified himself to JH as a doctor; he told her that he

---

**2.** "Although there may be some relaxing of the quantum of proof in those situations where a child is being treated, the facts and circum-

stances must support a finding that both prongs of the test were met." *Williamson,* 26 M.J. at 118.

was going to help her figure out what had happened and help her if she needed it. He believed that she understood the purpose of the visit because he had been her regular doctor before and had treated her during previous visits to the hospital. JH disclosed, among other things, that the appellant had touched her genital area and, in doing so, had caused her a great deal of physical pain. She added that the appellant told her not to tell anyone else because he would go to jail. She said that she did not want to go back to the appellant because she was afraid it would happen again. Based upon the interview and the physical examination that he conducted, Dr. Novek stated that his findings were highly suspicious, but not conclusive, of abuse.

The appellant contends that the military judge erred because JH did not want to make a doctor's appointment, nor did she complain of being in need of medical treatment. She had been taken to the hospital by NCIS Special Agent Hudson for a medical examination after her nanny brought the abuse to the attention of the FSC staff; Special Agent Hudson was also present when Dr. Novek interviewed her. The appellant argues that Dr. Novek's general inquiry at the end of the interview to those in the room, asking if anyone had any questions, shows that this was not an interview conducted for medical purposes and that Dr. Novek was merely participating in a criminal investigation into the alleged abuse.

The focus of the appellant's argument is misplaced. First, as our superior Court recognized in *United States v. Siroky*, 44 M.J. 394, 399 (1996), young children "are not expected to seek out medical treatment independently, but instead rely upon their caretakers to obtain treatment when necessary." Second, JH's interview was conducted by trained medical personnel. Although Special Agent Hudson attended the interview, there was little evidence at trial to show that he

participated in it.[3] Third, the mere fact that JH was transported to the hospital by an NCIS agent does not undermine the medical basis of her statements to Dr. Novek. *See Deland*, 22 M.J. at 73 (key to statement's admissibility is child's intent in speaking to psychiatrist, not mother's intent in bringing child to psychiatrist). Accordingly, we are satisfied that Dr. Novek was seeking the kind of information that medical personnel need to diagnose and treat young patients who may have been abused, that he was seen by JH as her doctor, and that she confided in him believing that he would provide her with medical assistance if she needed it.

### B. Interviews of JH by Dr. Craig

■ The other physician who examined JH was Dr. Craig, a pediatrician at the National Naval Medical Center and an expert in the area of child abuse. She testified about disclosures made to her by JH over the course of two interviews.

Dr. Craig was brought into the case at the request of the appellant's trial defense counsel, who wanted another evaluation and examination of JH by a different medical expert. She conducted her initial interview of JH on 4 September 1997, at her office in Bethesda, Maryland. As before, the appellant's defense counsel objected to any testimony about JH's disclosures. The military judge overruled the objection and made the following findings:

> I find that [JH], who is the subject of the interview, knew she was talking to a medical professional, she specifically called Dr. Craig, "doctor," and that she understood that truthful answers were necessary for treatment, and I find that no way inconsistent with a reluctance to answer or being emotional.

Record at 189.

Dr. Craig advised JH when she met her that she was a doctor who "[took] care of

---

3. HM3 Rodriguez–Calderon, the hospital corpsman who was at the interview, testified during the trial that she remembered the agent talking, but did not recall him directing any questions to JH. Record at 83. At the Article 32, UCMJ, investigation, however, Dr. Novek did testify towards the end of the interview—after JH had disclosed the abuse to him—Special Agent Hudson asked JH some additional questions about

what the appellant may have said to her concerning the abuse and why he was doing it to her. See Investigating Officer's Report of 6 November 1997, Transcript of Testimony of Witnesses at 6–7. Even though this information was not introduced at trial, we do not believe that it is significant enough to have changed the essential character of Dr. Novek's interview with JH.

children with tummy aches, sore throats, earaches, or other problems which we can treat and try to make better." Prosecution Exhibit 15 at 3. She also advised JH that she "[took] care of children who need to talk to us about things that might have happened to them." *Id.* Dr. Craig testified that she was wearing a white lab coat and had a stethoscope with her at the time of the interview. She ascertained that JH knew the difference between the truth and a lie and advised JH that it was important to tell the truth so she could determine what had happened and if there was a problem. JH became extremely upset when asked about the events in Italy. She managed to disclose that something bad had happened with her dad in the bed where they slept and that her dad had told her that he would go to jail if she told anyone about it. Although visibly agitated, JH refused to go into any detail, but did tell Dr. Craig that she wanted what had happened in Italy to stop. Due to JH's emotional state, Dr. Craig terminated the interview and proceeded to the physical examination. Based on the interview and the physical examination, her medical diagnosis was that JH had been emotionally traumatized and was most likely suffering from a post-traumatic stress disorder.

On 30 September 1997, Dr. Craig conducted a second interview after JH indicated a desire to meet with her again. The appellant's defense counsel objected to testimony about JH's statements from this interview, as well. Before ruling, the military judge made the following findings:

> So, and you also heard the doctor just testify that she was willing to change her plan and impression, her diagnosis if—if the information she got on the 30th were different.... So, with that in mind, I find based on Dr. Craig's testimony that the statements made by [JH] to Dr. Craig on the 30th of September 1997 were for the purpose of promoting her well-being and receiving medical treatment or diagnosis, that [JH] knew she was talking to a medical professional. In fact, she greeted her as ["]Dr. Craig["] and she understood the need for truthful answers, and that they

were necessary for her treatment, and your objection is overruled.

Record at 249.

Dr. Craig testified that when they met again, JH addressed her as "Dr. Craig" and appeared to understand that the medical history still needed to be completed. Dr. Craig indicated a need for the additional information to better understand what had happened to JH and, if necessary, to change the diagnosis and treatment plan in her initial evaluation report of 12 September 1997, Prosecution Exhibit 15.

On appeal, the gist of the appellant's objection is that the first prong of the medical treatment exception was not met. The appellant argues that Dr. Craig was initially consulted as a possible expert witness and not as a treating physician for JH. Therefore, Dr. Craig's questions were solely to elicit information for the purpose of litigation and not medical treatment. As further evidence in support of his argument, he claims that an NCIS agent was present during Dr. Craig's second interview of JH.

Although Dr. Craig may have been consulted initially by the appellant for litigation purposes, we do not believe it places her testimony about JH's disclosures outside the scope of Mil.R.Evid. 803(4). *See* STEPHEN A. SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL 948 (4th ed.1997)(editorial comment cites Advisory Committee's Note on Federal Rule of Evidence 803(4), the source of our military rule, as authority for the proposition that Mil.R.Evid. 803(4) also includes statements made to doctors who diagnose or are consulted for litigation purposes). Statements obtained by medical personnel in these types of cases almost always have the potential for dual uses in the medical and investigative arenas. Therefore, in determining the admissibility of statements under the medical treatment exception, we must examine the circumstances in which the statements were made. In other words, were they made for the purpose of medical diagnosis and treatment, or for some other nonmedical purpose?

In this case, JH and RH were under the care of their paternal grandfather at the time of their interviews. According to Dr. Craig,

she reviewed the case reports and wanted the grandfather to get the children into counseling if there was evidence of abuse. She could assist them by doing the medical evaluations; if needed, she could also provide the referrals that would enable the children to obtain counseling under their medical insurance plan. Even though Dr. Craig may have been asked by the trial defense counsel to examine JH in the hope that her findings could be helpful to the appellant, the fact remains that Dr. Craig's examination of JH and the disclosures that she elicited from this child had a medical purpose. In fact, there is nothing in the record to suggest that she conducted her examination of JH any differently than she would with any other patient she was evaluating for possible treatment. The presence of an NCIS agent who did nothing more than take notes while the doctor was obtaining the patient's medical history does not, in this instance, alter our view that the statements by JH were made for a medical purpose. Hence, we find that the first prong of test was met.

We find that the second prong of the test has been met as well. Dr. Craig introduced herself to JH as a doctor who helped kids; she wore the accouterments of a doctor when she conducted the interviews and examination; and she advised JH that she wanted the truth so she could determine if there was a problem. JH had been to a hospital and been treated by a doctor before, so we can assume that, even for a six-year-old child, she had some general understanding of who she was seeing and why. The mere fact that JH was initially reluctant to provide details of the abuse does not diminish her expectation of a benefit when she did finally decide to disclose the details. *See e.g., United States v. Clark*, 35 M.J. 98, 105 (C.M.A.1992)(finding a five-year-old child's statements admissible under medical treatment exception despite her initial lack of cooperation). By telling Dr. Craig that she wanted the abuse to stop, JH expressed a desire to be helped. Later on, when she was calmer about disclosing the details of the abuse, all indications from Dr. Craig's descriptions were that JH expected to be helped by providing this information to the doctor.

### C. Interview of RH by Dr. Craig

On 4 September 1997, Dr. Craig conducted a medical interview and examination of RH, as well, and later testified at trial about RH's disclosures to her. Although there was no allegation that RH had been sexually abused by the appellant, Dr. Craig testified that, in her experience, when one child has been abused, it is not uncommon for other children in that household either to be abused or to be traumatized in witnessing the abuse of another. As a result, these children may also require medical treatment or therapy. The appellant's trial defense counsel objected to the admission of any statements that RH made concerning JH. The military judge overruled the objection and made the following findings:

Well, I find that [RH] understood that she was talking to a doctor that helped children. She understood the need to tell the truth and based on Dr. Craig's testimony that she understood that it was in her best interest to be truthful and that those truthful answers were necessary for any type of treatment, whether it was physical or counseling. Even though [RH] probably didn't know what the word ["]counseling["] meant, but Dr. Craig said talk to for—to make you better or words to that effect. Therefore, I find that even though it is hearsay, it comes within M.R.E. 803(4), as medical exception to the hearsay rule.

Record at 230.

Dr. Craig told RH that she was a doctor who helped children by taking care of things such as "earaches or rashes or other problems." Prosecution Exhibit 34 at 1. She ascertained to her satisfaction that RH knew the difference between a true statement and a lie. When asked if anything had ever happened in bed between JH and her dad, RH said that something had happened and described it as "bad and yucky." Record at 231. When asked what she meant by "yucky," RH stated that she saw the appellant "open [JH's] private parts with his hands," Record at 232, and demonstrated what she had seen by spreading her legs and placing both of her hands over her genital area. She also said that the appellant told

JH to eat something in bed that night. She described the appellant kneeling over JH and telling her not to chew it. RH described and demonstrated how the appellant had placed a pillow under JH's face while JH had her buttocks raised in the air and how he had touched JH there. Dr. Craig concluded by the way RH reacted that she was upset by it and would need counseling, as well.

The appellant contends that neither prong of the medical treatment exception was met. He argues that this information was not elicited for medical diagnosis or treatment, but to facilitate an ongoing criminal investigation. Because the statements of RH related to someone other than herself, he claims that she could not have made these statements with any expectation of receiving a personal benefit.

The appellant's argument fails to consider the statements of RH in their proper context. It is common knowledge that psychological trauma can be just as devastating to the well being of an individual, particularly a child, as physical trauma. Dr. Craig interviewed RH in order to determine whether she might be experiencing emotional problems from the abuse of her sister; this was sufficient to show that the interview was for medical diagnosis and treatment. In conducting the interview, Dr. Craig was careful to ensure that RH knew and accepted that she was a doctor who helped children with their medical problems and that RH needed to answer truthfully in order to be helped. For a child of tender years, this was sufficient to establish an expectation of a medical benefit for the statements that she subsequently provided. *See* Prosecution Exhibit 34 at 8 (Dr. Craig's medical evaluation report of 15 September 1997). Accordingly, we find that the two-prong test for the medical treatment exception was satisfied with respect to the statements of RH.

D. Violation of the Confrontation Clause

Finally, the appellant challenges the admission of the children's statements on the grounds that his Sixth Amendment right of confrontation was violated. He argues that, unlike the traditional adult standard, the medical treatment exception as applied to young children is not a firmly rooted exception to the hearsay rule because the case law that allows their statements to be admitted under a more relaxed standard is relatively new. Thus, he argues, the Government failed to show that the declarants were unavailable to testify and that their statements had the particularized guarantees of trustworthiness making cross-examination unnecessary.

By failing to raise this constitutional argument at trial the appellant forfeited it as grounds for appeal. *Edens*, 31 M.J. at 267 n. 1; MIL.R.EVID. 103(a)(1). However, assuming *arguendo* that he did not forfeit it, he also fails to cite any legal authority in support of his argument that the statements of young children are not included under the medical treatment exception to the hearsay rule. Moreover, the decisions of the Supreme Court and our superior court suggest otherwise.

"The admission of out-of-court statements of child victims in sexual abuse cases is governed by the holding in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)." *United States v. Sumner*, 204 F.3d 1182, 1185 (8th Cir.2000). In *Wright*, the Supreme Court declared that, although directed at similar concerns, the requirements of the Confrontation Clause are not the same as those governing the rule against hearsay; in fact, the Confrontation Clause may bar admission of evidence that would otherwise be admissible under an exception to the hearsay rule. *Wright*, 497 U.S. at 814, 110 S.Ct. 3139. The Confrontation Clause does two things with respect to hearsay exceptions: first, it imposes a "rule of necessity" by requiring the Government to show that the declarant is unavailable to testify; second, it requires that the declarant's out-of-court statements bear adequate "indicia of reliability." *Id.* at 814–15, 110 S.Ct. 3139. However, the Court also stated that "[r]eliability can be inferred without more" in the case of statements lying within a firmly rooted exception to the hearsay rule or statements showing particularized guarantees of trustworthiness. *Id.* at 815, 110 S.Ct. 3139.

In *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the Supreme Court affirmed the judgement of the state appellate court, which held that the

statements made by a four-year-old sexual assault victim to an emergency room nurse and a physician were properly admitted under the medical treatment exception, even though she did not testify at trial. *Id.* at 358, 112 S.Ct. 736. In doing so, the Court held that the rule of necessity was not a requirement for spontaneous declarations and *statements made for medical treatment,* which were recognized without equivocation by the Court as firmly rooted exceptions to the hearsay rule. *Id.* at 357, 112 S.Ct. 736 (emphasis added). Our superior military Court has similarly held that the statements of young children who did not testify at trial were admissible under the medical treatment exception. *See Clark,* 35 M.J. at 106; *Edens,* 31 M.J. at 269; *Dean,* 31 M.J. at 204. Accordingly, we find no basis for the appellant's contention that his Sixth Amendment right of confrontation was violated.

### III.   Factual Sufficiency

In his next three assignments of error, the appellant contends the evidence is factually insufficient to prove that he is guilty of the charges. We disagree.

■ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

■ The statements that JH and RH gave to the physicians were obviously crucial to the Government's case because they provided the details of the sexual abuse and identified the appellant as the perpetrator. We found these statements, on the whole, to be trustworthy, coherent, and credible, given the ages of these children and their ability to comprehend and respond during the medical interviews. Whatever inconsistencies and ambiguities may have existed were not significant enough to diminish our overall assessment of the strength of the Government's case.

The initial reluctance of JH to fully cooperate was not unexpected, according to the trial experts, in light of the trauma resulting from such abuse and the gradual process of disclosure that generally occurs among children who have experienced it. The information provided to the doctors by JH and RH was corroborated in important respects by the medical examinations of JH's hymen following the abuse and the forensic analysis of her nightgown, which confirmed the presence of the appellant's semen. After reviewing all of the evidence, we are convinced beyond a reasonable doubt of the appellant's guilt as to each of the charges.

### IV.   Sentence Appropriateness

■ In his final assignment of error, the appellant contends that his sentence is inappropriately severe in light of his 14 years of naval service. We disagree.

For this court, "[s]entence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988). This process requires the "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(internal quotes and citation omitted).

In reviewing the record, we weighed the seriousness of the appellant's offenses and the long-term impact they are likely to have on the victim against the matters offered by the appellant in extenuation and mitigation, including his 14 years of naval service. As a parent, the appellant was responsible for the care and protection of his two young children. Instead, over a period of several months, he used the oldest child as an object for his own sexual gratification. The amount of punishment that he received as a result is simply commensurate with the type of offenses that he committed. Accordingly, we do not find his sentence to be inappropriately severe.

### V.   Disposition

We affirm the findings and sentence as approved on review below.

Judge ANDERSON and Judge NAUGLE concur.