UNITED STATES, Appellee

v.

Steven M. CUCUZZELLA, Airman
U.S. Air Force, Appellant

No. 07-0397

Crim. App. No. 36280

United States Court of Appeals for the Armed Forces

Argued November 5, 2007

Decided February 25, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, J., joined.  STUCKY, J., filed an opinion
concurring in the result.  RYAN, J., filed a concurring opinion.


Counsel

For Appellant:  Captain Anthony D. Ortiz (argued); Lieutenant
Colonel Mark R. Strickland (on brief).

For Appellee:  Captain Ryan N. Hoback (argued); Colonel Gerald
R. Bruce and Major Matthew S. Ward (on brief).

Military Judge:  Ronald A. Gregory


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**

Judge BAKER delivered the opinion of the Court.

Before a military judge sitting alone, Appellant pleaded guilty to one specification of battery and one specification of aggravated assault, both in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2000). The military judge accepted those pleas and entered findings of guilty. Appellant was convicted contrary to his pleas of one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2000). The adjudged and approved sentence included a dishonorable discharge, confinement for six years, and reduction to the lowest grade, E-1. The United States Air Force Court of Criminal Appeals affirmed. United States v. Cucuzzella, 64 M.J. 580, 586 (A.F. Ct. Crim. App. 2007). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN THE ADMISSION OF RC'S STATEMENTS TO THE REGISTERED NURSE AND SOCIAL WORKER AS MEDICAL EXCEPTIONS TO HEARSAY.

### FACTS

Appellant and his wife, RC, attended a Newborn-New Parent Support Program in September 2003. The program was run by Ms. Linda Moultrie, a registered nurse and the Family Advocacy Nurse at the Charleston Air Force Base Family Advocacy Office. Ms. Moultrie became concerned about RC's family life after reviewing the responses to the "family needs screener" paperwork completed by RC as a part of the intake procedure for the program.

2

According to Ms. Moultrie's testimony, the paperwork raised red flags as to RC's home environment. Ms. Moultrie saw RC again in response to a request from RC's pediatrician. The pediatrician requested that Ms. Moultrie come to the hospital and see if anything "needed to be looked at and assist [appellant and RC] at home." According to Ms. Moultrie, "he had concerns about them not paying attention to their newborn child."

Appellant contacted Ms. Moultrie in April 2004 to request marriage counseling. In response, Ms. Moultrie set up an intake session. She met with appellant and RC to do an initial assessment and referral. At this session, Ms. Moultrie advised Appellant and RC that their discussion was confidential, but that she was "mandated to report abuse and maltreatment." Appellant and RC told Ms. Moultrie there was no abuse. She gave the couple three names to contact and set up an appointment on April 27 to review their progress. On April 27, Appellant and RC reported that they had still not made an appointment for counseling so Ms. Moultrie set another appointment to meet with them on May 4.

On April 30, however, RC contacted Ms. Moultrie and asked to see her as soon as possible. RC subsequently arrived at the office around 1:30 p.m. with her mother and son. As before, Ms. Moultrie advised RC that "anything she told me was confidential but I had to report abuse and maltreatment." Ms. Moultrie

testified that RC started to tell her about bad checks she had written. "She didn't know what to do, so we started working on those issues." Ms. Moultrie conceded during cross-examination that the checks were the "initial emphasis to come into the office." In response to RC's concerns, Ms. Moultrie and RC discussed options for community assistance from the Family Support Center and funds from the Family Advocacy Group for the initial twenty to twenty-five minutes of their meeting.

Then, without elicitation, RC began to speak about sexual and physical abuse she was suffering at the hands of Airman Cucuzzella. Ms. Moultrie listened to RC's disclosure of abuse for over four hours. RC told Ms. Moultrie that she had wanted to contact her earlier, but Appellant had threatened to kill her if she said anything. Her demeanor in recounting the abuse was nervous, marked with intermittent weeping, which she explained as fear for her own and her family's safety. RC told Ms. Moultrie that Appellant had forced her to have sex with him on several occasions, including only two weeks after she delivered their child. Ms. Moultrie completed "a write-up" for the allegations of abuse and brought in a social worker to meet with RC. Ms. Moultrie also stated that "we" would be in touch with the First Sergeant throughout the weekend and gave RC the First Sergeant's pager number as well as the Hanahan Police Department's phone number.

4

At trial, over defense objection, the Government asked Ms. Moultrie to testify to the circumstances of her meeting with RC on April 30, 2004, on the ground that the statements in question were covered by the residual hearsay exception, or, alternatively, by the medical exception to the hearsay rule. The military judge found that RC's statements to Ms. Moultrie were admissible under Military Rule of Evidence (M.R.E.) 803(4) -- Statements for purposes of medical diagnosis or treatment. Specifically, the military judge found that:

> a preponderance of the evidence shows that [RC] made the statements regarding sexual abuse by her husband with the expectation of receiving treatment in the form of marital counseling and otherwise from a social worker identified as someone who could help with these issues. The statements, therefore, contain the indicia of reliability that underlies the premise of the exception and are therefore admissible as statements for purposes of medical diagnosis and treatment.

For the reasons stated below, we conclude that the military judge did not abuse his discretion in admitting the statements.[1]

---

[1] Because Appellant's wife testified at trial, no issue under the Confrontation Clause is raised.

United States v. Cucuzzella, No. 07-0397/AF

DISCUSSION

The Medical Treatment Exception

Hearsay is not admissible except as provided by the rules of evidence or an act of Congress. M.R.E. 802. The hearsay rules permit admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." M.R.E. 803(4).

We review a military judge's decision to admit evidence for an abuse of discretion. United States v. Donaldson, 58 M.J. 477, 482 (C.A.A.F. 2003). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." Id. (quoting United States v. Humpherys, 57 M.J. 83, 90 (C.A.A.F. 2002)).

In United States v. Edens, 31 M.J. 267 (C.M.A. 1990), this court established a two-part test for evaluating statements offered as exceptions to the hearsay rule under M.R.E. 803(4). "First the statements must be made for the purposes of 'medical diagnosis or treatment'"; and, second, the patient must make the statement "with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought."

Edens, 31 M.J. at 269 (quoting United States v. Deland, 22 M.J. 70, 75 (C.M.A. 1986)).

This exception to the hearsay rule is premised on the theory that the declarant has an incentive to be truthful because he or she believes that disclosure will enable a medical professional to provide treatment or promote the declarant's own well-being. The Edens test is intended to look beyond the statement itself to determine if this premise is well-founded in context. See Donaldson, 58 M.J. at 485-87; Edens, 31 M.J. at 269; Deland, 22 M.J. at 73.

Appellant challenges the admission of the statements under both elements of the Edens test. First, he argues that the statements were not made for the purpose of medical diagnosis, because Ms. Moultrie was not engaged in medical diagnosis. Second, even if she was, RC did not make the statements in expectation of treatment. Turning to the first argument, Appellant notes that Ms. Moultrie was not certified as a social worker, sexual abuse counselor, or marital counselor. Further, her testimony was arguably inconsistent regarding her role. Although she considered the new parent program a counseling program, she also said of her role, "I'm a friendly ear to anyone that walks into my office."

Over time, the medical exception has been broadened to include persons outside the medical profession, who perform

health care functions and receive statements for the purpose of medical diagnosis.  For instance, the rule includes statements made to nonmedical personnel as long as they are made for the purpose of seeking treatment.  See United States v. Welch, 25 M.J. 23, 25 (C.M.A. 1987) ("'[T]he statement need not have been made to a physician.  Statements to hospital attendants, ambulance drivers, or even members of the family might be included.'") (quoting Fed. R. Evid. 803(4) advisory committee's notes)); accord Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22, at A22-53 (2005 ed.) [hereinafter Drafters' Analysis]).  As a result, the reach of the medical hearsay exception is "[p]otentially . . . extremely broad."  Drafters' Analysis, app. 22 at A22-53.

In this case, the military judge found that the statements were made for the purpose of medical diagnosis.  This finding is not clearly erroneous.  While defense counsel sought to undermine this finding through cross-examination, the record, read in totality, reflects that as a Family Advocacy Nurse, Ms. Moultrie was engaged in mental health diagnosis and referral. For this reason, both Ms. Moultrie's status and her role were consistent with the provision of medical diagnosis and treatment, in concept and in fact.  Yet, Ms. Moultrie's status remains relevant to the determination of whether the declarant's

purpose in making the statements aligns with the purposes of the rule.

Thus, the more difficult evidentiary question in this case is whether the statements in question were made with some expectation of receiving medical benefit or treatment. A military judge's finding as to the declarant's state of mind in making a statement is a "preliminary question of fact under M.R.E. 104(a). As such, it will be set aside 'only if clearly erroneous.'" United States v. Kelley, 45 M.J. 275, 280 (C.A.A.F. 1996) (quoting United States v. Quigley, 40 M.J. 64, 66 (C.M.A. 1994)). In making this determination, the military judge should look to the circumstances surrounding the proffered testimony to determine that the appropriate indicia of reliability are present. See Deland, 22 M.J. at 73.

Here, the subjective state of mind of the declarant is a key factor in deciding whether the second prong is met, specifically, "'the state of mind or motive of the patient in giving the information . . . and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed.'" Kelley, 45 M.J. at 279 (quoting United States v. Faciane, 40 M.J. 399, 403 (C.M.A. 1994)). As a result, judgments on this element may well hinge on the credibility assessment of the trial judge.

They may also hinge on appropriate and fair inferences drawn from the context presented. For example, a judge might find the exception applicable in the case of a statement made by a declarant being examined on a diagnostic table in a doctor's office, even if the declarant later claims an alternative purpose for having seen the doctor. At the same time, we have cautioned that in contexts where the medical purpose and benefit may be less apparent, the rule should not be applied in a rote or mechanical manner. Rather, its application should depend on the identification of indicia that the elements and the purposes of the exception are met. For example, in cases involving statements by young children, where the medical purpose behind a visit might well be apparent to an adult, we have looked to see if the military judge has found indicia that the child herself was cognizant of the medical purpose of the visit. See United States v.Rodriguez-Rivera, 63 M.J. 372, 381 (C.A.A.F. 2006); Donaldson, 58 M.J. at 485; Kelley, 45 M.J. at 280; Edens, 31 M.J. at 268.

Situations involving mental health counseling can also raise complex legal and factual questions beyond those presented in traditional physical examination settings because the declarants involved may have compound or uncertain purposes for being present, may not be in a position to appreciate the context in which they are making the statements, or may have

mixed intent in making the statements in question.  Thus, this court has cautioned that when:

> statements made by a patient to a psychiatrist are offered under Mil. R. Evid. 803(4), the military judge must determine that the statements were elicited under circumstances which made it apparent to the patient that the psychiatrist desired truthful information and that only by speaking truthfully would [h]e receive the desired benefits from the psychiatric consultation.

Deland, 22 M.J. at 73.

Such admonition is particularly apt where the mental health diagnosis and treatment is offered in the context of marital counseling.  In such context, declarants may well have mixed motives as well as ulterior motives behind their words.  So too, the reliability of the statements at issue may be clouded by emotional distress.

Learned Hand and Oliver Wendell Holmes both noted that the common law moves with small currents, but through its collective motion, one might well look up to find oneself far from the intended textual and legal shore.  In this case, as an appellate court, we have looked up, and still find the legal shore in sight.  The military judge did not abuse his discretion in finding these indicia of reliability present.

RC's contact with Ms. Moultrie was for the purpose of treatment in the context presented.  The relationship with Ms. Moultrie originated with the Newborn-New Parent program.  In

this context, Ms. Moultrie was identified to RC as a Family Advocacy nurse. Ms. Moultrie also referred to Appellant and RC as clients at the outset of her meetings with Appellant and RC and with RC alone. She advised that the sessions were confidential barring a report of abuse. Further, in addition to providing general knowledge to expectant parents, Ms. Moultrie indicated that the parent support program was a type of counseling program. As part of this program, Ms. Moultrie served as a point of contact and intake nurse for referrals to specialists, including marital counselors, and social workers. She indicated through her testimony that in order to provide the services or make service referrals, it was important that she know the facts and circumstances or ask about abuse.

The contact between RC and Ms. Moultrie continued in the context of a medical referral from RC's pediatrician. Ms. Moultrie had previously indicated her concern for RC's well-being when she sought to contact her regarding disclosures she had made on intake forms involving her husband's lack of support for her pregnancy. Ms. Moultrie had also demonstrated to RC that she played a counseling role by acting as a referral for marriage counseling. This is corroborated by RC's trial testimony that she believed Ms. Moultrie was "somebody to provide counseling."

Most important is the circumstantial evidence surrounding the April 30 session. On the one hand, the record reflects that the immediate topic of discussion was RC's concern about bad checks. On the other hand, even if one assumes that RC's need to speak with Ms. Moultrie "as soon as possible" derived from her financial problems, as opposed to a desire for mental health counseling, there came a time when the purpose of the April 30 session was clearly oriented toward treatment, counseling, and referral. Ms. Moultrie's session notes taken during RC's disclosure of the abuse appear typical to the nursing practice. They are standardized as "subjective, objective, action, plan," suggesting diagnoses and treatment. As noted by the military judge, RC's unnerved demeanor during her discussion of the abuse corroborates her motivation for seeking treatment. A four-hour session that included a detailed discussion of the history and progression of abuse resembles statements made to a psychiatrist for diagnosis or treatment through counseling, which are statements plainly incorporated under the rule. See United States v. Morgan, 40 M.J. 405, 409 (C.M.A. 1994); Deland, 22 M.J. at 73.

Finally, while Ms. Moultrie wore a number of hats as an intake gatekeeper, including advisor regarding bad checks, she did not play the role of a law enforcement agent. Ms. Moultrie made RC aware of her obligation to disclose any discussion of

abuse to authorities; she did not play a forensic role in her capacity as Family Advocacy Nurse. Indeed, rather than refer RC directly to the Hanahan police, she provided RC the number for the police. There was no indication of an established relationship between Ms. Moultrie and the authorities. Thus, this case is distinguished from the circumstances in United States v. Brisbane, 63 M.J. 106, 108, 111-14 (C.A.A.F. 2006), where the intake nurse served on the Child Sexual Maltreatment Response Team and played a forensic as well as a medical role in taking the statements.

As a result, for the reasons stated above, the military judge's finding that RC's statements "were made with the expectation of receiving counseling help for her marital situation" is not clearly erroneous. Further, the military judge did not abuse his discretion in concluding "the statements . . . contain the indicia of reliability that underlies the premise of the exception and are therefore admissible as statements for the purposes of medical diagnosis and treatment."[2]

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

[2] Because we find that the statements fall within the medical hearsay exception, it is not necessary to address whether the statements would fall within the residual hearsay exception.

STUCKY, Judge (concurring in the result):

I concur in the result and much of the majority's analysis. I write separately only to state that I do not understand the majority opinion to require military judges, in cases like this one, to engage in a particularized analysis of the reliability of hearsay statements.

In 2004, the Supreme Court changed the ground rules for the admission of such statements. Crawford v. Washington, 541 U.S. 36, 61 (2004). Before Crawford, an unavailable witness's statements against a criminal defendant were not barred from admission if they bore "adequate indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 66 (1980). "To meet that test, evidence must either fall within a 'firmly rooted hearsay exception' or bear 'particularized guarantees of trustworthiness.'" Crawford, 541 U.S. at 40 (quoting Roberts, 448 U.S. at 66)).

In Crawford, the Supreme Court overruled Roberts. Whorton v. Bockting, 127 S. Ct. 1173, 1179 (2007); Crawford, 541 U.S. at 60, 67. The Confrontation Clause "commands, not that evidence is reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Crawford, 541 U.S. at 61. Thus, a declarant's testimonial statements are barred from admission unless the declarant testified at trial or was unavailable to testify and the accused

had a prior opportunity for cross-examination.  2 Stephen A.
Saltzburg et al., Military Rules of Evidence Manual
§ 801.02[1][a][ii] (6th ed. 2006).  In Bockting, the Supreme
Court explained that nontestimonial hearsay may be admitted even
if it lacks indicia of reliability.  Bockting, 127 S. Ct. at
1183.  Of course, such evidence would still be subject to the
rules of evidence.

The evidence at issue in Appellant's case -- RC's out-of-
court statements to Ms. Moultrie -- was testimonial.
Nevertheless, because RC testified at Appellant's court-martial,
Confrontation Clause concerns were satisfied.  As a necessary
corollary to the Bockting rule, I understand that once these
concerns are satisfied, testimonial evidence is to be treated in
the same manner as nontestimonial evidence -- it is admissible,
subject only to the rules of evidence.  As required by Military
Rule of Evidence 803(4), the military judge found that RC made
the statements to Ms. Moultrie for the purpose of diagnosis or
treatment and had some expectation of receiving a medical
benefit as a result.  See United States v. Ureta, 44 M.J. 290,
297 (C.A.A.F. 1996).  Those findings of fact are not clearly
erroneous.  Therefore, the military judge did not abuse his
discretion in admitting this evidence.

United States v. Cucuzzella, No. 07-0397/AF

RYAN, Judge (concurring):

I concur in the careful opinion of the Court based on the standard of review; the military judge applied the correct law and did not clearly err in his findings of fact.  United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995); United States v. Hollis, 57 M.J. 74, 79 (C.A.A.F. 2002).  I would hold similarly if the military judge had come to the opposite conclusion and ruled that the statements in question did not fall under the medical exception to the hearsay rule.  In my view the facts presented by this case are at the very banks of the legal shore envisioned by the language and purpose of Military Rule of Evidence 803(4) as it has evolved through case law.