UNITED STATES

v.

Airman Steven M. CUCUZZELLA,
United States Air Force.

ACM 36280.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 24 Feb. 2005.

25 Jan. 2007.

Appellate Counsel for Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland and Captain Anthony D. Ortiz.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, Major Nurit Anderson, and Major Michelle M. McCluer.

Before ORR, Senior Judge, MATHEWS, and THOMPSON, Appellate Military Judges.

## OPINION OF THE COURT

MATHEWS, Judge:

The appellant stands convicted, in accordance with his pleas, of a single specification each of battery and aggravated assault, both in violation of Article 128, UCMJ, 10 U.S.C. § 928; and also, contrary to his pleas, of one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920. His approved sentence consists of a dishonorable discharge, confinement for 6 years, and reduction to the grade of E–1. Finding no error, we affirm.

### Background

The appellant was assigned to Charleston Air Force Base (AFB), South Carolina, where he lived on base with his wife, RC. In the fall of 2003, shortly before the birth of their first child, the appellant and RC partici-pated in a New Parent Support Program, administered by the Charleston AFB Family Advocacy Office. The program was, at the time, administered by a registered nurse, Ms. Linda Moultrie. Ms. Moultrie had been employed in the Family Advocacy program for about ten years when she first met the appellant and RC. Ms. Moultrie spoke with RC during the course and met with her individually at least twice while RC was pregnant and shortly after the birth of her child.

Ms. Moultrie received a telephone call from the appellant in April 2004, asking for marriage counseling. The appellant related that his wife had moved out of their home because she "was upset about their mar-riage." Ms. Moultrie agreed to see the cou-ple together, and did so at an intake meeting on 20 April 2004. Although Ms. Moultrie was not herself a marriage counselor, she was authorized to gather information and make assessments and referrals as needed. Ms. Moultrie gave RC and the appellant the names of several counselors, and advised them about other services available to them under the military health care system.

About ten days after this initial appoint-ment, RC called Ms. Moultrie and said she needed to see her "as soon as possible." RC refused to disclose over the telephone why she needed to see Ms. Moultrie, but prom-ised to tell her when the two met in person. Ms. Moultrie agreed to see RC that after-noon. When they met, RC initially wanted to discuss financial issues with Ms. Moultrie, expressing concern that the appellant had taken all of the money from their account while there were still checks outstanding. This discussion lasted 20–25 minutes.

RC then changed the subject of the con-versation, disclosing that the appellant had repeatedly abused her, both physically and sexually. This disclosure was made sponta-neously and without prompting. According to RC, the appellant "forced" her "to have sex" on a number of occasions, including once shortly after the birth of the appellant's child. RC told Ms. Moultrie that on that occasion, although she was still in pain and had been advised by a physician not to en-gage in intercourse for at least another

month, the appellant "threatened her" and she "submitted" because the appellant "usually forced her" to have intercourse. This discussion lasted more than four hours.

During the course of those hours, Ms. Moultrie observed that RC seemed hesitant at times, particularly when discussing sexual matters.[1] Ms. Moultrie observed that RC appeared nervous and cried several times when discussing the appellant's abusive behavior. Ms. Moultrie also noted bruising on RC's skin, apparently the result of the appellant's alleged use of force to obtain sex from RC earlier that week. At the conclusion of her meeting with RC, Ms. Moultrie referred RC to a licensed social worker and gave her the numbers of a local women's shelter and the civilian police department.

About a week later, RC contacted the civilian police and provided a five-page, handwritten statement attesting in detail to her husband's physical and sexual abuse. She also gave a statement to agents of the Air Force Office of Special Investigations (AFOSI). The civilian police arrested the appellant, who initially denied RC's allegations. About two weeks after posting bond, however, the appellant paid a visit to the police and provided them with a handwritten statement of his own.

Following a proper rights advisement, the appellant informed the police that "on 10 seperate [sic] occasions" he "forced [RC] to have sex" with him. He did so, he wrote, "[e]ven after she repeatedly said no." He identified the dates of his most recent attacks, describing how he "held [RC] down by her arms" and "continued until [he] ejaculated." He said that during their struggle in the last incident, on 26 April 2004, their bed "broke." The appellant also confessed to being "physically abusive" toward RC during their two years of marriage and admitted to "leav[ing] bruises on her."

In particular, the appellant described an incident when, near the end of RC's first pregnancy, he asked if he "could force her into labor" in an effort to obtain leave and avoid work the following day. Although RC refused "because she was afraid for the baby's health," the appellant "proceeded anyway." He inserted a wooden chopstick into RC's vagina in an attempt to break the baby's amniotic sac, but was unsuccessful when the stick broke off inside RC. Undaunted, the appellant obtained a metal skewer, and this time was successful in inducing labor.

*Procedural History*

The appellant was charged with committing battery on divers occasions for the various incidents in which he allegedly struck RC, and aggravated assault for the incident involving the broken chopstick and metal skewer. He pled guilty to those offenses pursuant to a pretrial plea agreement (PTA) with the convening authority. He was also charged with raping RC on divers occasions, but pled not guilty to that offense. RC, who had by the time of trial reconciled with her husband, recanted all her prior claims of sexual abuse. She adamantly insisted that her statements to Ms. Moultrie, the police, and the AFOSI were lies, except insofar as they described the incident with the skewer and other physical abuse. The prosecution nonetheless proceeded to trial on the rape charge.

The trial counsel moved *in limine* for a ruling on RC's statements to Ms. Moultrie and to civilian and military law enforcement officers, offered under the so-called residual hearsay exception of Military Rule of Evidence (Mil. R. Evid.) 807. The military judge declined to admit RC's statements to the police or the AFOSI, but found that her statements to Ms. Moultrie were admissible under the medical hearsay exception of Mil. R. Evid. 803(4). He concluded that RC's statements to Ms. Moultrie "were made with the expectation of receiving counseling help for her marital situation," and, citing *United States v. Morgan*, 40 M.J. 405, 408–09 (C.M.A.1994) (statements to health care professionals, for the purpose of obtaining counseling, may be admissible as medical

---

1. RC's mother, RB, accompanied her to the meeting with Ms. Moultrie. Ms. Moultrie asked RC if she would prefer to discuss the sexual abuse in private, but RC declined. Ms. Moultrie recalled that RB encouraged RC to tell "everything," but was not forceful in her encouragement and did not prompt RC with any specific details.

hearsay), found that the statements were therefore made for purposes of medical diagnosis and treatment. The military judge also concluded that the appellant's confession to the local police department was sufficiently corroborated under Mil. R. Evid. 304(g).

During trial on the merits, the trial counsel offered the appellant's confession and the hearsay statements of RC to Ms. Moultrie. In addition, the prosecution offered the stipulated testimony of three witnesses: the local police department detective who took the appellant's confession, a civilian victim's advocate who recalled the appellant saying that everything RC had told the police in her initial complaint was true, and RC's mother, RB, who recalled visiting the appellant's home on 26 April 2004, the date the appellant said he raped RC and broke their bed. According to the stipulation, RB found RC in the bedroom, "upset and tearful," next to a broken bed.

The trial defense counsel called just one witness, RC, to testify on behalf of the appellant. RC testified that she made up the story of sexual abuse in order to "burn" the appellant for withdrawing money from their checking account while there were still checks outstanding that she had written. She admitted, however, that she disclosed the appellant's sexual abuse to a friend of the family *prior* to the date the appellant took out the money. In addition, RC testified that the appellant, after providing his confession to the police, told her he did so because the police told him he had to give a statement or he would not "ever see [RC] or [the appellant's son] again." This claim was contradicted by the police detective, as well as the appellant's initials on the front page of his statement attesting that "no promises or threats ... and no pressure nor coercion of any kind" were employed in the taking of his confession.[2]

On cross-examination, the trial counsel explored possible reasons for RC's change of

heart. RC acknowledged that the appellant had markedly changed his behavior toward her after his arrest, apologizing, promising to go to marriage counseling, and speaking to her "in a very sweet tone." She agreed that he "was finally becoming the type of husband that [she] wanted him to be," and that she just "wanted [her] marriage" to the appellant "to work out," for the sake of their children.[3]

After RC testified, the defense rested and the prosecution offered no rebuttal evidence. The military judge found the appellant guilty as charged.

*Discussion*

The appellant contends before us, as he did at trial, that RC's out-of-court statements were inadmissible hearsay and should not have been considered. He also contends, *inter alia,* that his confession should not have been admitted and that the evidence against him was legally and factually insufficient to support his conviction for rape. The appellant's claims are without merit.

1. *Admissibility of RC's Statements to Ms. Moultrie*

■■■ The appellant contends that the military judge erred in concluding that RC spoke to Ms. Moultrie for the purpose of obtaining medical diagnosis or treatment, and therefore erred in admitting RC's statements under Mil. R. Evid. 803(4). We review the military judge's decision to admit RC's out-of-court statements for an abuse of discretion. *United States v. Donaldson,* 58 M.J. 477, 482 (C.A.A.F.2003). An abuse of discretion occurs when the military judge's ruling is based on (1) an incorrect understanding of the law or (2) clearly erroneous findings of fact. *United States v. Hollis,* 57 M.J. 74, 79 (C.A.A.F.2002). We find no abuse here.

■■■ Out-of-court statements are admissible under the medical hearsay exception when (1) made for the purpose of medical diagnosis or treatment and (2) the declarant

---

2. The appellant waived, as part of his PTA, any challenge to admissibility of his confession based on voluntariness. He did not, however, waive his right to argue that the confession was obtained by coercion and was therefore unreliable.

3. RC testified that she was, at the time of trial, pregnant with the appellant's second child.

has some expectation of receiving medical benefit for the diagnosis or treatment being sought. *United States v. Edens*, 31 M.J. 267, 269 (C.M.A.1990). RC's statements were made to a medical professional who had previously advised RC on health care matters and referred her to other health care providers. The type of information RC relayed to Ms. Moultrie concerning the appellant's abuse was reasonably pertinent to devising a treatment plan that would ensure RC's emotional and physical well-being and thus would apparently fall within the medical hearsay exception.[4] Mil. R. Evid. 803(4); *Morgan*, 40 M.J. at 409.

■ This leaves the question of RC's expectation when providing her statements to Ms. Moultrie. The underlying premise of Mil. R. Evid. 803(4) is the declarant's "perception ... that if he or she gives truthful information, it will help [the patient] to be healed." *United States v. Kelley*, 45 M.J. 275, 279 (C.A.A.F.1996). Intent may be proven by direct or circumstantial evidence: the declarant's testimony is not required.[5] *Hollis*, 57 M.J. at 79–80. Here, however, the military judge was faced with evaluating the intent of a declarant who actually *did* testify, but recanted her out-of-court declaration and disclaimed any expectation of obtaining a medical benefit. RC testified her sole purpose was to "burn" the appellant. If credited, her in-court claims would inescapably foreclose admission of RC's out-of-court statements.

■ The military judge, however, clearly did not credit RC's in-court version of events. Neither do we. Her testimony was thoroughly dismantled by the trial counsel, who not only elicited RC's bias in favor of the appellant but also effectively impeached her alleged motive to fabricate her statements to Ms. Moultrie by showing that RC disclosed the appellant's sexual abuse *before* the incident which she claimed made her angry with the appellant. We note, as well, the fundamental flaw in RC's claim to have fabricated the rape allegation as a means of "burning" the appellant: no reasonable person could have believed it necessary. Her disclosure of the appellant's undisputed pattern of physical abuse, and in particular the horrific incident involving the broken chopstick and metal skewer, was more than enough. No embellishment was needed. Moreover, the other evidence in the case—including the eyewitness account of RB, and especially the appellant's confession—leads to but one conclusion: that RC's initial account of sexual abuse to Ms. Moultrie was truthful, and her subsequent recantation a lie.

Having concluded that RC lied in court, we find no fault with the military judge's decision to determine RC's expectations by relying on circumstantial evidence rather than RC's testimony. That evidence supports the military judge's decision to admit the statements under Mil. R. Evid. 803(4). RC's disclosure of the appellant's sexual abuse (1) was made to a medical professional, (2) who was known to RC to be a medical professional, (3) who had provided RC with medical information and referrals before, (4) concerning a subject on which RC understood her to have professional expertise. The military judge's findings of fact were not clearly erroneous. *See United States v. McCollum*, 58 M.J. 323, 332 (C.A.A.F.2003) (findings not clearly erroneous when sufficient evidence to support them exists in the record).

■ Even were we to conclude that the military judge abused his discretion by admitting RC's statements under the medical hearsay exception of Mil. R. Evid. 803(4), we would find no prejudice, for those same statements were admissible under another rule.

4. The appellant complains that Ms. Moultrie, as a member of the Family Advocacy office, had a "duty to report" spousal abuse to the appropriate law enforcement authorities. He reasons that she thus served in a prosecutorial role, rather than as a health care provider. We disagree. Many jurisdictions require public and private officials, including doctors, to report evidence of intrafamilial violence to the police. This requirement is ancillary to their medical role and does not render statements made to them per se inadmissible. *See United States v. Hollis*, 57 M.J. 74, 80 (C.A.A.F.2002); *United States v. Welch*, 25 M.J. 23, 26 (C.M.A.1987). We further note that, whatever Ms. Moultrie's "duty" in this regard, there was no evidence presented that she actually reported the appellant.

5. Indeed, such a requirement would appear to defeat the purpose of the rule.

*See United States v. Robles,* 53 M.J. 783, 798–99 (A.F.Ct.Crim.App.2000). We find the statements also were admissible in accordance with Mil. R. Evid. 807.[6] RC's statements to Ms. Moultrie were evidence of a material fact and were more strongly corroborative of the appellant's confession-the accuracy of which was challenged at trial-than any other evidence available to the prosecution. RC's out-of-court statements were reliable, as evidenced by the circumstances surrounding their making[7] and the subsequent confession of the appellant. *United States v. Wellington,* 58 M.J. 420, 425 (C.A.A.F.2003), *writ denied,* 60 M.J. 427 (C.A.A.F.2004) (when declarant testifies, satisfying Confrontation Clause, court may consider extrinsic evidence to determine out-of-court statement's reliability). The interests of justice would not be served by exclusion of such reliable, probative evidence. Mil. R. Evid. 807; *Morgan,* 40 M.J. at 409; *United States v. Hines,* 23 M.J. 125, 134 (C.M.A.1986).

### 2. *Corroboration of the Appellant's Confession*

The appellant argues that his confession to the local police should not have been admitted because it was insufficiently corroborated. We again review the military judge's decision to admit the appellant's confession for an abuse of discretion. *United States v. Pipkin,* 58 M.J. 358, 360 (C.A.A.F.2003). Again, we find no such abuse.

 To be admitted, an accused's confession must be corroborated by evidence sufficient to justify an inference that the essential facts of the confession are true. Mil. R. Evid. 304(g). Corroborating evidence need not establish all of the elements of the offense, nor establish the truth of the confession by even a preponderance of the evidence. *United States v. Baldwin,* 54 M.J. 464, 465 (C.A.A.F.2001). Only a "slight" or "very slight" quantum of evidence is needed to fulfill the corroboration requirement of Mil. R. Evid. 304(g). *United States v. Mel-*

*vin,* 26 M.J. 145, 146 (C.M.A.1988); *United States v. Yeoman,* 25 M.J. 1, 4 (C.M.A.1987). The evidence in the instant case more than meets this requirement.

 As noted above, the appellant's confession was most strongly corroborated by RC's out-of-court statements to the Family Advocacy nurse, Ms. Moultrie. RC's testimony, while slanted in favor of the appellant, provided additional corroboration. Although she recanted her claim that the appellant forced her to have sex with him, RC continued to maintain that the appellant physically abused her, confirming, for example, the incident involving the broken chopstick and the metal skewer. Her testimony dovetailed with the admissions concerning these offenses contained in the appellant's confession, permitting an inference that he was speaking truthfully as to all of the offenses described therein. *United States v. Mitchell,* 29 M.J. 854, 855 (A.F.C.M.R.1989).

RC also testified that the appellant engaged in intercourse with her on 26 April 2004 and that their bed broke, injuring her. This is consistent with the appellant's confession, which specified that the last rape was on that date and that the bed broke after he pushed RC down on it. RB's stipulated testimony, to the effect that she saw RC in her bedroom crying on 26 April 2004, and saw the broken bed, serves as further corroboration. The military judge did not abuse his discretion by admitting the appellant's confession.

### 3. *Remaining Issues*

We have considered the remaining issues raised by the appellant and resolve them adversely to him. The evidence admitted at trial was both legally and factually sufficient to support the appellant's conviction for rape. Article 66(c), UCMJ, 10 U.S.C. 866(c); *United States v. Turner,* 25 M.J. 324, 324–25 (C.M.A.1987). The appellant has not demonstrated any probability that calling RC as a witness at his Article 32[8] hearing would have produced a more favorable result, nor that

---

6. The Rule under which they were originally offered.

7. In particular, RC's demeanor, the absence of any evidence of coaching or coercion, and the

medical setting in which the disclosures were made.

8. Article 32, UCMJ, 10 U.S.C. § 832.

his counsel's tactical decision to save her for trial was, in light of his confession, unreasonable. *United States v. Saintaude*, 61 M.J. 175, 179–80 (C.A.A.F.2005), *cert. denied,* — U.S. ——, 126 S.Ct. 576, 163 L.Ed.2d 463 (U.S.2005); *United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991). Finally, we find that the appellant's confession was given voluntarily; and the appellant expressly waived his right to challenge the admission of his confession on voluntariness grounds as part of his bargain with the convening authority. *See United States v. Rivera*, 46 M.J. 52, 55 (C.A.A.F.1997).

### Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred.[9] Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge ORR participated in this decision prior to his reassignment.

---

**9.** In addition to the brief filed on the appellant's behalf by his appellate defense counsel, this Court is also in receipt of two motions filed by the appellant, *pro se,* requesting that we set aside his rape conviction under Rule for Courts–Martial (R.C.M.) 1201 and order a new trial under R.C.M. 1210. For the reasons set forth in this opinion, we find no basis for granting either request and hereby deny them.