# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WEIS[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class CORLEY Z. BLACK**
**United States Army, Appellant**

ARMY 20140010

Defense Language Institute Foreign Language Center
Douglas K. Watkins, Military Judge
Lieutenant Colonel Tiernan Dolan, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Yolanda McCray Jones, JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major A.G. Courie III, JA; Major Daniel D. Derner, JA; Captain Nathan S. Mammen, JA (on brief).

29 April 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WEIS, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of sexual assault in violation of Article 120(b)(3), Uniform Code of Military Justice, 10 U.S.C. § 920(b)(3) (2012) [hereinafter UCMJ].  The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for two years.[2]

---

[1] Judge WEIS took final action in this case while on active duty.

[2] The military judge credited appellant with three days of pretrial confinement credit.

Appellant's case is before this court for review pursuant to Article 66, UCMJ. Of appellant's two assignments of error, the following merits discussion but not relief:

> THE MILITARY JUDGE ERRED BY OVERRULING DEFENSE HEARSAY OBJECTIONS BASED ON AN "OUTCRY" EXCEPTION THAT IS NOT CURRENTLY RECOGNIZED IN MILITARY LAW.

We conclude the military judge abused his discretion in allowing certain statements by the victim into evidence, over defense objection, by applying an "outcry" exception independent of Military Rule of Evidence [hereinafter Mil. R. Evid.] 801 or 803.[3]

However, we further conclude this error was harmless in light of multiple similar statements of the victim received in evidence pursuant to a Mil. R. Evid. 803(2) "excited utterance" exception to the hearsay rule.

## I. FACTS

In the early evening of 1 March 2013, the victim, Specialist (SPC) AL, and her best friend and roommate, Specialist SR, went to a restaurant/bar to meet with appellant and his friend, Private First Class (PFC) JJ, prior to a party planned for that evening. Everyone, with the exception of Specialist SR, consumed alcohol at the establishment.

Specialist SR, SPC AL, and PFC JJ were aware that appellant had previously reserved and paid for a nearby hotel room for the planned party. SPC AL was aware that "several people" had talked about a possible party at the hotel room and that throughout the evening PFC JJ was "desperately" trying to get others to come to the hotel room for a party.

Specialist SR, however, had no plans to go to the hotel room party. Around 2300, Specialist SR left the restaurant/bar because she was underage to consume alcohol and was bored. The appellant, SPC AL, and PFC JJ subsequently left the restaurant/bar and went to a CVS pharmacy store where SPC AL purchased alcohol for the planned party. The three proceeded to the hotel room and all consumed more alcohol. All three still held expectations of others showing up for the party; however, despite the efforts of all parties involved, no other persons ever appeared at the hotel room. Upon the suggestion of SPC AL, the three went to a nearby dance club where they consumed more alcohol. According to PFC JJ, appellant and SPC

---

[3] The matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), is without merit.

AL were "drunk" when they left the dance club. SPC AL was stumbling and needed assistance getting back to the hotel room.

Appellant and PFC JJ ordered some food through room service. SPC AL felt sick, thought she might vomit, and fell asleep on a couch before the food arrived. Appellant and PFC JJ continued to drink after ordering room service; SPC AL did not consume any alcohol the remainder of the evening. PFC JJ could not wake up SPC AL when the room service food arrived and he never saw SPC AL awake during the remainder of the evening. SPC AL was fully clothed and sleeping on the couch, and appellant was still awake, when PFC JJ eventually fell asleep.

SPC AL testified that she awoke feeling the weight of appellant's body on her. Her breasts were exposed and her tights were down around one of her legs. She fell back asleep. When she awoke a second time, appellant's penis was inside her. She tried to push appellant off of her. She then told appellant to stop and he stopped, pulled up his trousers, and apologized. At that time, PFC JJ had passed out on the floor. SPC AL kicked PFC JJ but he did not wake up. SPC AL tried to stay awake but she again fell back asleep.

In the early morning hours, SPC AL awoke and telephoned Specialist SR and stated that she "had been raped" by appellant. PFC JJ awoke to find SPC AL on the telephone. SPC AL told PFC JJ that she had awoken with appellant's "fingers inside her" and that appellant had "put his penis inside her." Soon thereafter, someone arrived to take SPC AL from the hotel to the barracks.

## II. LAW

A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010); *United States v. Cucuzzella*, 66 M.J. 57, 59 (C.A.A.F. 2008); *United States v. Roberson*, 65 M.J. 43, 45 (C.A.A.F. 2007). A military judge abuses his or her discretion when he or she is incorrect about the applicable law or improperly applies the law. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F 2004).

The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *White*, 69 M.J. at 239 (internal quotation marks and citation omitted).

If this court finds an abuse of discretion, it then reviews the prejudicial effect of the ruling de novo. Prejudice from an erroneous evidentiary ruling is evaluated by weighing "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Roberson*, 65 M.J. at 47-48 (quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Statement of Victim to Specialist SR Admitted as "Outcry Evidence"

At trial, Specialist SR testified as to her observations of and interactions with SPC AL the morning of the incident.  Specialist SR testified that SPC AL called her early that morning "with a shakiness in her voice" and that "she sounded shaken . . . was crying a little bit, and . . . sounded kind of angry as well."  Specialist SR testified that SPC AL stated during the telephone conversation that "she had been raped."  Defense counsel's hearsay objection to this statement was initially sustained by the military judge.

Specialist SR next testified that, in response to the telephone conversation, she waited for SPC AL to come to their barracks room.  As a result, trial counsel argued that the telephonic statement by SPC AL was admissible as an "effect on the listener" exception to the hearsay rule.  Defense counsel renewed the hearsay objection.  The military judge observed that the "effect on the listener [argument] is extremely weak" but sua sponte concluded that the statement was "admissible as outcry evidence."

Specialist SR further testified that, after the telephone conversation, SPC AL came to their barracks room "crying and shaking," "angry and scared," and stated that she "felt really dirty, and she just wanted to take a bath."  Specialist SR testified that she sat over SPC AL in the bathtub and "rubbed her head while she just talked about what happened."  When trial counsel asked Specialist SR what SPC AL had told her about the night before, defense counsel objected on hearsay grounds:

> Q:  And what happened next?
>
> A:  Um, she just sat in the bathtub and cried.  I sat over her, and I rubbed her head while she just talked about what happened.
>
> Q:  And what did she say?
>
> A:  She said that she had woken----
>
> DC:  Objection.
>
> MJ:  Basis?
>
> DC:  Hearsay.
>
> MJ:  Government?

ATC: It's continuing under 803(3). It's an excited utterance in accordance with the court's ruling.

MJ: I didn't rule that it was an excited utterance.

ATC: Admissible under--as outcry.

. . . .

MJ: All right. You want to be heard, Defense?

DC: Well, I don't believe a proper foundation has been laid if the government is going to offer under that basis, so I would renew my objection if asked that.

MJ: Well which basis?

DC: Um, on the excited utterance basis.

ATC: The government withdraws its response as it relates to 803(3).

The record reveals that, after this colloquy between the military judge and counsel, the witness, Specialist SR, did *not* answer the question of what SPC AL stated while in the bathtub. Thus, the sole statement to Specialist SR received in evidence as "outcry evidence" over defense objection was the telephonic statement by SPC AL to Specialist SR that "she had been raped."

*B. Statements of Victim to PFC JJ Admitted as "Outcry Evidence"*

The Article 32, UCMJ, hearing testimony of PFC JJ, which was read into evidence, reflects that, the morning of the incident, SPC AL told him that appellant had "touched her" and that "she was woken up to Black's fingers inside of her, and that it was not welcomed . . . ." Defense counsel objected on hearsay grounds. The military judge overruled the objection by concluding the statements were "proper outcry evidence." These were the only statements by SPC AL to PFC JJ received in evidence as "outcry evidence" over defense objection.

*C. "Outcry" Evidence*

Appellant urges, as an assignment of error, that the "military judge erred by allowing numerous hearsay statements into evidence over defense objections by applying an 'outcry' exception independent of Mil. R. Evid. 801 and 803."

As just outlined, the military judge admitted in evidence the following two statements of SPC AL, over defense objection, pursuant to an "outcry" exception:

(1) telephonic statement to Specialist SR that she "had been raped"; and (2) statements to PFC JJ that appellant "had touched her" and that "she had woken up to [appellant's] fingers inside her, and that it was not welcomed . . . ."

In so ruling, the record clearly reflects that the military judge described the "outcry" exception in precisely the terms used in the 1969 revised edition of the *Manual for Courts Martial* [hereinafter *MCM*, 1969]. Paragraph 142c ("Fresh complaint and lack of fresh complaint") of the *MCM*, 1969 provided:

> In a prosecution for a sexual offense in which an alleged victim of either sex has testified that consent was lacking, evidence that the alleged victim made a complaint of the offense within a reasonable time after its commission is admissible for the purpose of corroborating the testimony of the victim, and this is so whether or not lack of consent is an element of the offense and even if the credibility of the victim has not been directly attacked. This evidence is to be restricted to proof that the complaint, including the identification of the offender, was made. A description of the details of the offense given during the course of making the complaint is not admissible under this rule. However, a description of the details of the offense related during the course of making the complaint may be received in evidence if admissible as evidence of a consistent statement for the purpose of corroboration under 153*a*, or if admissible under the spontaneous exclamation (142*b*), or any other, exception to the hearsay rule.

This "outcry" exception does not appear in the current *Manual for Courts-Martial* (i.e., the 2012 edition) or any of its recent updates or amendments. *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*, 2012]. However, defense and government appellate counsel agree that the term "outcry" as explained by the military judge is synonymous with the description of "fresh complaint" in the current version of the *MCM*.

As noted in *United States v. Smith*, "[A]n express exception for fresh complaint has been deleted as being unnecessary." 14 M.J. 845, 846-47 (A.C.M.R. 1982) (quoting Analysis of Military Rule of Evidence 412, 8 M.J. at CLVII). Nonetheless, "fresh complaint" evidence remains viable in military jurisprudence under certain circumstances. Evidence of fresh complaint, which is either non-hearsay under Mil. R. Evid. 801 or fits within an exception to the hearsay rule under Mil. R. Evid. 803, is relevant and admissible. *Smith*, 14 M.J. at 847; *MCM*, 2012, App. 22, Analysis of the Military Rules of Evidence, A22-36. Specifically, a "fresh complaint" by a victim of a sexual offense may, depending upon the circumstances,

6

fall within a hearsay exception such as present sense impression, excited utterance, or then-existing mental, emotional or physical condition. *MCM*, 2012, App. 22, Analysis of the Military Rules of Evidence, A22-55. However, "[r]eference to 'fresh complaint' should be avoided as confusing and unduly restrictive." *Smith*, 14 M.J. at 847 n.1.

In the instant case, we conclude that the military judge abused his discretion in allowing the statements at issue into evidence, over defense hearsay objection, through application of an "outcry evidence" exception *independent* of any analysis of Mil. R. Evid. 801 or 803. *See United States v. Swift*, ARMY 20100196, 2016 CCA LEXIS 26, at *7-9 (Army Ct. Crim. App. 21 Jan. 2016) (mem. op.).

### D.  *No Prejudice Established*

Having determined an abuse of discretion as to evidentiary rulings by the military judge, this court next reviews de novo any prejudicial effect of the erroneous rulings. *United States v. Roberson*, 65 M.J. 43, 47-48 (C.A.A.F. 2007). We find no prejudice in that certain similar statements made by SPC AL to PFC JJ were subsequently properly admitted in evidence by the military judge under an "excited utterance" hearsay exception and not as "outcry evidence." Accordingly, evidence of SPC AL's outcries were not only cumulative with her in-court account of what transpired but also with her admissible "excited utterances" regarding the incident.

Although defense and government appellate counsel both address any continuing viability of the "outcry exception" in military jurisprudence, neither acknowledges that certain statements made by SPC AL to PFC JJ were admitted in evidence, over defense hearsay objection, pursuant to a Mil. R. Evid. 803(2) "excited utterance" exception to the hearsay rule.

### 1.  <u>Victim Statements to PFC JJ—Excited Utterances</u>

The trial colloquy reveals that several statements made by SPC AL to PFC JJ initially admitted in evidence by the military judge as "outcry" were later admitted under an "excited utterance" hearsay exception:

> A:  *[SPC AL] said that [appellant] put his penis in her*.

> Q:  Did she say they had sex?

> A.  Um, I don't— I don't— *I know for a fact that she said that he put his penis in her*.

> Q:  *She say that he raped her*?

A: Um, I don't remember. I really don't remember. *That was at that point, the way that she described the story, definitely it didn't need to be said that that's what she felt happened.*

Q: Describe that for me, I don't understand.

DC: Again, Your Honor. Same objection, hearsay. I think it has now gone beyond outcry to specifics of the outcry statement.

MJ: Government?

ATC: Your Honor, within the response he states the emotional stress of the event, and that the individual--that [SPC AL] is under the stress of that event and having an immediate response to it in her explanation of what was going on.

MJ: Okay, and that's relevant to me, how?

ATC: Relevant as to----

MJ: To show her emotional state? Is that what you're saying, or for a hearsay exception?

ATC: To establish the emotional state that therefore goes to--is circumstantial evidence as to----

MJ: As circumstantial evidence that something happened?

ATC: Yes, Your Honor.

MJ: See you're confusing me because there was a hearsay objection.

ATC: My apologies, Your Honor. *Normally you would have a foundation prior to the excited utterance, but this-- the line of questioning kind of builds.*

MJ: Okay, that's why--that's what I'm asking about. *If this is for excited utterance or just circumstantial evidence of her emotional state to show that something happened.* Two different things.

8

ATC:  I know they're two separate things.  *I'll answer the hearsay exception.  I believe we have fallen with the excited utterance*, but also the— could serve as a purpose to both.

MJ: Well, okay.  *I'll listen to more to see if we get to a foundation for excited utterance.*

ATC:  Yes, Your Honor.

Q:  Describe that for me, I don't understand.

A.  Um, the way that she--she kept saying that, um, *it was unwanted* and that *she didn't want it* and she was very torn up, she was crying.  And but the way--the story itself that she told, I remember--I don't remember if she said it or not, but that was what I--that's what I thought she was saying.  *That's what I--that's the story she told, was that she had been raped by Black.*  But I don't know she actually said that.

MJ:  All right.  *So Defense, probably a better foundation for an excited utterance, so I'm overruling your objection.*  But the witness' personal knowledge seems to be----

DC:  I would agree, Your Honor. It seems to be that he is assuming stuff based on--not based on his memory.

MJ:  Well, assuming some stuff and not sure about his perceptions perhaps.  I guess if that makes you feel better, that's how I'm considering it.  Government?

ATC:  I think, Your Honor----

MJ:  I guess what I'm saying, it goes to the weight.  But go ahead, government.

ATC:  Yes, Your Honor.  As the responses indicated earlier, that were clear, that "I know that she said he put his penis into her" and then in his explanation he says that it's unwanted.  That she's under the stress of the event, etc.  So those subsequent statements, although he's hedging, he was very clear in the beginning.  And taking the testimony in its totality I think the testimony is clear.

> MJ:  Well, I just ruled in your favor, Government.

(emphasis added).

Moreover, another trial colloquy reveals that additional statements made by SPC AL to PFC JJ were admitted in evidence under the "excited utterance" exception to the hearsay rule and not as "outcry" evidence:

> Q:  Do you remember how [SPC AL] woke you up?
>
> A:  It was, um, it had to be more of a noise that she made. I don't know if it was her talking or the door was shut. Something woke me up and she was active inside the room.
>
> Q:  She didn't come over and shake you?
>
> A:  No.
>
> Q:  Just her action in the room was enough to wake you up?
>
> A:  Yes.
>
> Q:  *And then that's when she--well, what did she first tell you?*
>
> DC:  *Objection, hearsay.*
>
> MJ:  *Government?*
>
> ATC:  *This is an excited utterance, Your Honor, in accordance with prior testimony.  Foundation has already been laid.*
>
> MJ:  *Is this basically the same statement that I already ruled on?*
>
> ATC:  *Yes, Your Honor.*
>
> MJ:  *Defense, is there any difference here, or are you just noting your objection for the record?*
>
> DC:  *There's no difference in the contents, and I am noting the objection for the record.*

MJ:  *Overruled.*

A:  That her--she was going to leave and to watch my friend Black around women.

Q:  And at that point [what] would you take that to mean?

A:  Um, I had no idea what that meant at first.  I thought maybe he had, maybe he had said something.  I in no way thought that this would be the issue.  I thought maybe he said something or did something maybe--that maybe kind of creeped her out or something like that.

Q:  So I guess that though she didn't indicate anything sexual assault oriented happen[ed] initially, right?

A:  No, not with that first statement.  No.

Q:  What kind of inspired her to go on and make a second statement?

A:  Um, she was really shaken up and I think that I asked her to explain or asked what he did.  *And that's when she said that he had touched her and she started talking about that.  And at some point she sat down on the bed and told me that--that he had entered her vagina.*

Q:  Okay.  And *I think you said actually that first time she told you she thought it was fingers?*

*A:  Yes.*

Q:  Okay, was she clear about that at that point?

A:  Um, she said that there was a, um, a big wet spot on the couch and that--I don't remember if she said that his fingers were in her, or had been in her.  I don't remember how she worded it.  *And then, but quickly after saying that she said--she sat down and she told me that she had--she said,*

DC:  *I'm going to object to that next statement as hearsay.*

MJ:  *Government?*

11

> ATC*: This is an ongoing excited utterance, Your Honor.*
>
> MJ: *Overruled.*
>
> A: *"That's not all. He put it in me." And I asked her what it was, and she said "his penis."*
>
> Q: Okay, what did you do at that point? I know you said you were upset.
>
> A: Yeah, I was upset. I was very hazy. I sat up in bed. I--my first thought was towards her and helping her out. I was upset at Black. I don't remember what I said in regards to Black. I don't remember really what I said to offer help to her. All of that is speculation on my part. But I do remember that I was very concerned for her and angry at the situation.

(emphasis added).

The statements, admitted in evidence under an "excited utterance" hearsay exception, are substantially similar, if not the same, statements of SPC AL erroneously admitted under the "outcry exception." Appellate defense counsel does not argue that the military judge erred in applying a Mil. R. Evid. 803(2) "excited utterance" hearsay exception to the statements. Moreover, we find no abuse of discretion by the military judge in this regard. Thus, we conclude that any error by the trial judge in admitting similar statements under the "outcry" exception to be harmless error.

### 2. Victim Statement to Specialist SR

Although we find the military judge erred in admitting the telephonic statement of SPC AL that she "had been raped" in applying an "outcry" exception independent of an analysis of the Military Rules of Evidence, we conclude such error was harmless.

SPC AL's telephonic statement to Specialist SR that she "had been raped" may have been admissible under alternative viable theories.[4] The statement may

---

[4] *See, e.g., United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003) ("military judge's error was harmless, because the military judge reached the correct result, albeit for the wrong reason"); *United States v. Kindle*, 45 M.J. 284, 288 (C.A.A.F.

have been admissible under the "excited utterance" exception to the hearsay rule. Mil. R. Evid. 803(2). The statement may have been admissible as non-hearsay offered to rebut an express or implied charge of recent fabrication or improper influence or motive. Mil. R. Evid. 801(d)(1)(B); *MCM*, 2012, App. 22, Analysis of the Military Rules of Evidence, A22-53; *see also State v. Graham*, 815 N.W.2d 293, 302 (S.D. 2012) (assertion in opening statement sufficient to permit admission of prior consistent statement to rebut a charge of recent fabrication); *United States v. Morgan*, 31 M.J. 43, 46 (C.M.A. 1990) (prior consistent statement admissible under Mil. R. Evid. 801(d)(1)(B) where defense counsel "raised two separate theories through his cross-examination of mother and child and his argument"). Additionally, the statement may have been used to evaluate the witness' credibility, and not as substantive evidence, following impeachment of the witness. *United States v. Coleman*, 72 M.J. 184, 188 (C.A.A.F. 2013); *see also United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001).

However, because the military judge admitted the statement as "outcry" evidence, the record was not sufficiently developed as to any other possible theories as to admission of the statement. Thus, we are precluded from determining whether a sufficient alternative evidentiary foundation could have been established with respect to admission of the statement. For instance, we cannot conclude whether SPC AL's statement to Specialist SR was made "while the declarant was under the stress of excitement cause by the event" or if the prior consistent statement was "made before the alleged recent fabrication or improper influence or motive occurred." Mil. R. Evid. 803(2); *United States v. McCaskey*, 30 M.J. 188, 192 (C.M.A. 1990); Mil. R. Evid. 801(d)(1)(B); *see also Tome v. United States*, 513 U.S. 150 (1995); *Morgan*, 31 M.J. 46.

Nonetheless, even assuming that SPC AL's telephonic statement to Specialist SR was not admissible under any rule or theory, we determine the admission of the statement was harmless error in that the statement was cumulative with SPC AL's in-court detailed testimony and also consistent with the properly admitted "excited utterances" made by SPC AL to PFC JJ minutes before the telephonic statement to Specialist SR.

---

1996) (Gierke, J., concurring) ("[T]he military judge was correct in excluding . . . testimony as residual hearsay, but he was laboring under an incorrect view of the law. In short, he ruled correctly for the wrong reasons."); *United States v. Copeland*, 21 C.M.R. 838, 863 (A.F.B.R. 1956) ("However, though the reason for the ruling was incorrect, the ruling itself was correct. . . . [T]he fact that the reasoning was wrong is of no consequence, for it is the judicial *action* and not judicial reason that determines the correctness of the trial proceedings."); *Robertson v. State*, 829 So. 2d 901, 906-907 (Fla. 2002) (Even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principal of law in the record which would support the ruling.).

## IV. CONCLUSION

Upon consideration of the entire record, the finding of guilty and the sentence are AFFIRMED.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court